IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LAWANDA ANN PRESLEY                                                   PLAINTIFF

V.                          NO. 13-2122

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration           DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, Lawanda Ann Presley, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

      Plaintiff filed her current applications for DIB and SSI on January 11, 2011, and December 9, 2011, respectively, alleging an inability to work since November 12, 2010, due to eyesight, depression, and menopause. (Tr. 10, 115, 150). An administrative hearing was held on December 2, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 24-58).

-1-

By written decision dated May 18, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - decreased visual acuity, depression and anxiety. (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can only do unskilled work, meaning work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment involved and supervision is simple, direct and concrete. Her visual problems allow her to drive during the day and handle a time schedule, basic meals and personal care to be prepared to leave for work. She can read dark print against a light background that is approximately a 14-point font and can be seen by someone with a visual acuity of 20/100.

(Tr. 14). With the help of the vocational expert (VE), the ALJ determined that Plaintiff was unable to perform any past relevant work and that during the relevant time period, Plaintiff could perform such jobs as newspaper route carrier and storage facility rental clerk. (Tr. 17-18).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on April 13, 2013. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Tr. Docs. 15, 16).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following arguments on appeal: 1) The ALJ did not develop the record fully and completely; 2) The ALJ's credibility analysis is improper; 3) The ALJ's RFC determination is inconsistent with the evidence; and 4) Plaintiff cannot perform the jobs identified at step five. (Doc. 15).

### A. Failure to Fully and Fairly Develop the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case.

Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989).

Plaintiff argues that the ALJ should have contacted the ophthalmologist to specifically ascertain Plaintiff's work-related limitations rather than make his own layman's judgment, and that the ALJ failed to ensure that Plaintiff's complaints regarding her hands were explored.

The ALJ had before him the letter from ophthalmologist Dr. Randel L. Saylor, of the Eye Group, dated March 21, 2011. (Tr. 240-241). In the report, Dr. Saylor reported that Plaintiff's visual acuity uncorrected was 20/200 on both eyes, and with correction, her vision on the right eye was 20/50 and in the left eye 20/100. (Tr. 240). He reported that the visual fields were normal on the right eye and there was some generalized constriction on the left eye. (Tr. 240). He reported that Plaintiff had a history of amblyopia of the left eye related to a childhood esotropia, which was probably partly due to her hyperopia in both eyes. He concluded that there was no treatment at that point in time that was going to improve the left eye, and that she also had early cataracts which was more significant on her better right eye. (Tr. 241). He noted in his letter that Plaintiff needed a "+1.50 add for near." (Tr. 240).

The ALJ also had before him the Physical RFC Assessment of Dr. Jim Takach, dated

March 28, 2011, where Dr. Takach noted that Plaintiff had limited near and far acuity and depth perception, and that she retained the ability to avoid the normal hazards of the workplace. (Tr. 246-253).

A Mental Diagnostic Evaluation dated April 25, 2011, by Terry L. Efird, Ph.D., was also contained in the record. (Tr. 255-258). Dr. Efird diagnosed Plaintiff as follows:

> Axis I:   depressive disorder NOS; anxiety disorder NOS
> Axis II:  deferred
> Axis F:   50-60

(Tr. 257). He further reported that Plaintiff endorsed the ability to drive familiar routes, to shop independently, and to perform most activities of daily living adequately, although she said "I got to be in the mood." (Tr. 258). Dr. Efird further reported that Plaintiff communicated and interacted in a reasonably socially adequate manner for that setting, and that Plaintiff maintained having been primarily socially isolated for a couple of years. (Tr. 258). Plaintiff was found to have communicated in a reasonably intelligible and effective manner, have the capacity to perform basic cognitive tasks required for basic work like activities, and would probably have difficulty with complex types of cognitive tasks. (Tr. 258). Dr. Efird believed Plaintiff appeared able to track and respond adequately for the purposes of the evaluation, and the level of performance on the task of digit span was indicative of probably marked difficulty with immediate auditory attention span. (Tr. 258). He found Plaintiff generally completed most tasks during the evaluation, and that no remarkable problems with persistence were noted. He concluded that Plaintiff appeared to have the mental capacity to persist with tasks if desired, that she completed most tasks within an adequate time frame, and that no remarkable problems with mental pace of performance were noted during the evaluation. (Tr. 258).

The ALJ also had before him the Mental RFC Assessment and Psychiatric Review Technique form, completed by non-examining consultant Jay Rankin, M.D. (Tr. 259-261, 263). Dr. Rankin found that Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; complexity of tasks was learned and performed by rote, with few variables, little judgment; and where supervision required was simple, direct and concrete (unskilled). (Tr. 261). He also found Plaintiff had a mild degree of limitation in restriction of activities of daily living, and had a moderate degree of limitation in difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace and no episodes of decompensation. (Tr. 273).

Also included in the record is the General Physical Examination conducted by Dr. Chester Lawrence Carlson, dated August 10, 2011. (Tr. 285-289). Dr. Carlson noted that Plaintiff smoked one pack of cigarettes per day, and that her range of motion of her extremities were all normal and her range of motion of her cervical and lumbar spine were normal. (Tr. 285, 287). All limb functions were reported as normal, and Dr. Carlson reported Plaintiff had 100% grip in both hands. (Tr. 288). Dr. Carlson diagnosed Plaintiff with decreased visual acuity and depression, and reported poorly described generalized joint pain of unknown etiology. (Tr. 289). He also found Plaintiff suffered from perimenopause and reported that her moderate depression limited her social functioning, untreated. (Tr. 289). He also reported no significant physical dysfunction was found. (Tr. 289). Although Plaintiff argues in her brief that Dr. Carlson did not test Plaintiff's grip, Plaintiff's testimony at the hearing does not make that clear. When asked whether Dr. Carlson gave Plaintiff a grip test, Plaintiff stated she could not recall. (Tr. 38).

Plaintiff presented herself to Good Samaritan Clinic on September 28, 2011 and

November 9, 2011, was assessed with depression, and was prescribed Celexa and later Prozac. (Tr. 295, 296). At the September 28, 2011 visit, Plaintiff reported that she forgot to bring her stool sample, and said she could not check her bowel movement because she was "incontinent a lot and also has been eating red meat." (Tr. 296). She also reported she could not take medications because they caused her to be ill. (Tr. 296). Plaintiff testified that the Good Samaritan Clinic had a basket of eyeglasses she looked at, but they were either too strong or not strong enough. (Tr. 43).

In his decision, the ALJ considered Dr. Saylor's consultative eye examination, stating that while Plaintiff's vision was limited, Dr. Saylor did not recommend any specific limitations on the Plaintiff's activities due to her vision problems, and that the lack of such recommendations from an ophthalmologist also showed that Plaintiff's visual problems did not cause any greater limitations than those in the RFC. (Tr. 15-16). The ALJ also addressed the findings of Dr. Carlson, who noted Plaintiff's "poorly described" generalized joint pain of unknown etiology, and who found that Plaintiff had no significant physical dysfunction. (Tr. 16). The ALJ also considered the opinion of Dr. Takach, who found that Plaintiff had no exertional limitations, but stated that it did not take into account Plaintiff's subjective complaints and was therefore given little weight. (Tr. 16). The ALJ considered Plaintiff's complaints of joint pain and her testimony that she had swelling and pain in her hands and worsening grip strength. He concluded that his RFC assessment took that into account by limiting her work at the light exertional level. (Tr. 16).

The ALJ also reported that in terms of Plaintiff's decreased visual acuity, she reported that she watched television, cooked her own meals and cleaned house. (Tr. 15, 168). It is also noteworthy that Plaintiff reported that she could handle personal finances and drive familiar

routes. (Tr. 13, 258, 261). These are not the types of activities that would be able to be performed by someone with disabling impairments.  As noted by Defendant, Plaintiff's argument for disability appears to be that, because she claims she cannot obtain a common pair of eyeglasses she qualifies for disability. At the hearing, Plaintiff testified that she had a prescription for glasses but could not afford to fill it, so she just bought the highest strength glasses from Dollar Tree. (Tr. 34). Plaintiff stated that a few years prior, she went to "that Lion Place" and they sent her to the eye doctor and told her there was nothing they could do for her, and that she should have worn her glasses when she was a little girl, and that they did not furnish her any glasses. (Tr. 34).  And, as stated earlier, she checked the basket of glasses at the Good Samaritan Clinic. There is no indication, however, that Plaintiff has recently made any other significant efforts to obtain free or low cost eyeglasses on a sustained or serious basis.  In addition, Plaintiff apparently is able to afford to smoke one pack of cigarettes per day.

The ALJ determined that the opinions of Dr. Rankin, Dr. Efird, and Dr. Saylor deserved substantial weight, and took their findings into account in the RFC.  (Tr. 17).

Based upon the foregoing, the Court believes the existing medical sources were sufficiently complete for the ALJ to make a determination regarding Plaintiff's vision and hand impairments, and therefore Plaintiff's argument is without merit.

   **B.**  **Credibility Determinations:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional

restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). Plaintiff basically argues that the ALJ carried out his responsibility under Polaski "very poorly."

A review of the ALJ's decision reveals that the ALJ addressed Plaintiff's activities of daily living, noting that she reported she cleaned, swept, did laundry and dishes, could handle personal finances and drive familiar routes. (Tr. 13). The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 15). He found that although Plaintiff indicated she had lost jobs due to her vision, her daily activities undermined the allegations that Plaintiff had greater restrictions than those given in the RFC assessment. (Tr. 15).

It is also important to note that Plaintiff's vision could be improved considerably with a pair of glasses, and although Plaintiff was provided a prescription for eyeglasses, she has not provided sufficient evidence to support the fact that she is not able to obtain the glasses, either free or at a reduced cost. "A failure to follow a recommended course of treatment also weighs against a claimant's credibility." Guilliams v. Barnhart, 393 F.3d 798, 802.(8th Cir. 2005).

Based upon the foregoing, the Court finds there is substantial evidence to support the

-10-

ALJ's credibility findings.

### C. RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams, 393 F.3d at 801; Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

The Court has thoroughly discussed the objective medical evidence the ALJ had before him, and the weight the ALJ gave to the various opinions. Based upon that discussion, as well as the discussion given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's RFC determination.

### D. Whether Plaintiff can Perform the Jobs:

Plaintiff first argues that the hypothetical posed to the VE was not accurate, based upon arguments previously presented when discussing the ALJ's RFC. He then argues that the ALJ erred in finding that Plaintiff would be able to perform the job of storage facility rental clerk. At

AO72A
(Rev. 8/82)

the hearing, Plaintiff's attorney asked the VE whether Plaintiff could do that job if she had problems with far acuity at a distance, to which the VE responded that she could not do that job. Therefore, Plaintiff argues that this leaves the position of newspaper carrier, which Plaintiff argues is typically performed on a part-time basis and may not even rise to the level of SGA.

In his hypothetical question to the VE, the ALJ stated as follows:

> Q: It describes ages 52 with a ninth grade education, ninth grade limited education. The lady's [sic] had the visual impairment as described and as mentioned by the opthamologist [sic] who did the examination for the administration as being amblyopia. In the – let's see – history of amblyopia in the left eye from childhood. The left eye was weak and there's left eye eotropia, so the eye was wanting to go out away from where it needed to; did patching therapy in the right eye and it may have helped that to some extent. At any rate as an adult she still continues with visual impairment as far as acuity is concerned, especially in the left eye. According to consultative evaluation 20/50 in the right eye and 20/100 in the left eye. Said there's some constriction of visual fields in the left, visual fields are normal in the right. This is according to the examination which really the only record, the only good record at any rate that we have in the file of a visual examination. It mentioned also she had some early cataracts which may be more significant on her better right eye, could progress and there may come a time in the future she may need cataract surgery. This was a visual exam done about six months ago. So that's the background on the hypothetical individual who's had lifelong visual problems, wearing glasses as a child, not as an adult. . . . Assume that her visual capabilities allow her to handle a time schedule, basic meals, and personal care, be prepared to leave for work and would allow her to drive to work during the day. . . . Assuming that any reading requirements on the job allow for lighting and reading material which would help the hypothetical employee to read dark print against a white background, just like we have on this sheet of paper, which is the ordinary way of presenting printed material for a person to read on an ordinary basis. Add a 14 point font level. I've circled that which corresponds to 20/100 vision which is the worst eye, which corresponds to text in a junior high text book. The font in the hypothet itself is roughly 18 point font, in the body, the text of the hypothet, which corresponds to roughly 20/130 vision. Let's see - just sort of recap there that she described that she could dive[sic] and care for herself and her home. That's the hypothet. Mr. Seifert if you accept those hypothetical assumptions as fact in your

>professional opinion could she perform and sustain at her past relevant work on a regular work basis, which would allow earning substantial gainful activity? . . .

(Tr. 47-49). The VE did not believe Plaintiff would be able to do her past relevant work, but then the ALJ asked him if there would be any unskilled work at the light or sedentary exertional levels. (Tr. 54). The VE responded:

>A: Okay, in that case, your honor, there are jobs available that would be such as newspaper carrier, a route newspaper carrier. . . . It does not require far depth perception or accommodating, or color vision, or filed [sic] of vision, and occasional near acuity. . . .a storage facility rental clerk.

(Tr. 54-55).

The Court believes the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole, Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). The Court finds that the VE's responses to the hypothetical questions posed by the ALJ constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a newspaper carrier or storage facility rental clerk. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's step five findings.

## IV.    Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby

affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 10th day of April, 2014.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)